IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| MARTHA W. WALLACE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 2:07cv850-WC |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION**

**I.    INTRODUCTION**

Plaintiff Martha W. Wallace (Wallace) applied for disability insurance benefits pursuant to Title II of the Social Security Act, 42 U.S.C. § 401 *et seq.* (2000) and for supplemental security income benefits under Title XVI, 42 U.S.C § 1381 *et seq.* (hereinafter collectively the Act), alleging she was unable to work because of a disability. Wallace's applications were denied at the initial administrative level. Wallace then requested and received a hearing before an Administrative Law Judge (ALJ). Following the hearing, the ALJ also denied the claims. The Appeals Council rejected a subsequent request for review. The ALJ's decision consequently became the final decision of the Commissioner of Social Security (Commissioner).[1]  See Chester v. Bowen, 792 F.2d 129,

---

[1]Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub. L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

131 (11th Cir. 1986). The case is now before the Court for review under 42 U.S.C. § 405(g). Pursuant to 28 U.S.C. § 636(c), both parties have consented to the conduct of all proceedings and entry of a final judgment by the undersigned United States Magistrate Judge. Pl.'s Consent to Jurisdiction (Doc. #10); Def.'s Consent to Jurisdiction (Doc. #11). Based on the Court's review of the record and the briefs of the parties, the Court REVERSES AND REMANDS the Commissioner's decision.

## II.   STANDARD OF REVIEW

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).[2]

To make this determination, the Commissioner employs a five step, sequential evaluation process. See 20 C.F.R. §§ 404.1520, 416.920 (2006).

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1? [the *Listing of Impairments*]
> (4) Is the person unable to perform his or her former occupation?

---

[2] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

McDaniel v. Bowen, 800 F.2d 1026, 1030 (11th Cir. 1986).[3]

The Court's review of the Commissioner's decision is a limited one. This Court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); Graham v. Apfel, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). A reviewing court may not look only to those parts of the record which support the decision of the ALJ but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. Hillsman v. Bowen, 804 F.2d 1179 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings. . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

---

[3] McDaniel v. Bowen, 800 F.2d 1026 (11th Cir. 1986) is a supplemental security income case (SSI). The same sequence applies to disability insurance benefits. Cases arising under Title II are appropriately cited as authority in Title XVI cases. See, e.g., Ware v. Schweiker, 651 F.2d 408 (5th Cir. 1981) (Unit A).

Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).

### III.   ISSUES

#### *A.   Introduction*

Wallace was forty-years old and had a high school education at the time of the hearing before the ALJ. Tr. at 280. Wallace's prior work experience includes employment as a cashier, certified nurse assistant, daycare worker, and sewing machine operator. Tr. at 80, 94A. Following the administrative hearing, and employing the five step process, the ALJ found Wallace had not engaged in substantial gainful activity since the alleged onset date (Step 1). Tr. at 19. At Step 2, the ALJ found Wallace suffered from the following severe impairments: left shoulder impingement syndrome; rotator cuff tendinitis; major depressive disorder; anxiety disorder; obesity; and lumbar degenerative joint disease. Id. Nonetheless, the ALJ found Wallace did not possess an impairment or combination of impairments that met or equaled the criteria of any listed impairment set forth in the Listing of Impairments (Step 3). Id. at 20. At Step 4, the ALJ found Wallace could not perform her past relevant work based upon her residual functional capacity (RFC). Tr. at 23. Wallace had established her *prima facie* case.

At Step Five, the ALJ evaluated Wallace's RFC, age, education, and work experience, as well as testimony from a vocational expert regarding the availability in significant numbers of other work Wallace could perform in the national economy. Upon consideration of this evidence, the ALJ determined Wallace possessed the RFC to

perform jobs that exist in significant numbers in the national economy. Tr. at 23-24. Consequently, the ALJ found Wallace has not been disabled since the alleged onset date. Tr. at 24.

### B. *Wallace's Claims*

Wallace sets forth two issues: (1) whether the ALJ erred in rejecting the medical opinion of her treating psychiatrist; and (2) whether the ALJ's RFC finding is supported by substantial evidence. Pl.'s Br. in Supp. Comp. (Doc. #13) at 11 (hereinafter Pl.'s Br.). With respect to Wallace's first issue, she claims each reason the ALJ articulated for rejecting the medical opinion of Dr. June Serravezza (Serravezza), M.D., her treating psychiatrist, does not provide an adequate basis for affording no weight to that opinion. Id. at 13. More particularly, Wallace claims her Global Assessment of Functioning (GAF) score of 64 concerns merely her level of functioning, but does not assess her ability to engage in substantial gainful activity. See id. at 13-14. As such, Wallace argues this evidence cannot contradict her doctor's opinion. Wallace also claims – by implication – her multiple appointments with Dr. Serravezza evidence a treating relationship which "rises above the classification of minimal." See id. at 14. Wallace further argues the medical opinions of Drs. David C. Ghostley (Ghostley), Psy. D., and Vijay Vyas (Vyas), M.D., are consistent with her doctor's, because Dr. Ghostley opined Wallace's mental impairments impaired her ability to function in a work environment, and Dr. Vyas repeatedly noted Wallace "struggles with her mental impairments." Id.

5

Because only the opinion of Dr. Eno, a non-treating physician, contradicts Dr. Serravezza's, Wallace argues substantial evidence does not support the ALJ's decision. See id.

The Commissioner refutes Wallace's contentions, arguing the ALJ clearly articulated his reasons for discounting Dr. Serravezza's opinion. Def.'s Mem. Supp. Comm'r Decision (Doc. #16) at 4-6 (hereinafter Def.'s Br.). For the reasons provided below, the Court finds good cause did not exist to disregard Dr. Serravezza's opinion and remands this matter back to the Commissioner.[4]

**IV. DISCUSSION**

Wallace's first issue concerns Dr. Serravezza's opinion, which provided 19 responses rating the degree of Wallace's mental impairments. Tr. at 222-23. Dr. Serraverzza opined Wallace exhibits marked impairment[5] in: (1) interacting appropriately with the general public; (2) the ability to get along with co-workers or peers; (3) restriction of daily activities of living, attending meetings, working around the house, and socializing with friends and neighbors; (4) the ability to understand, remember and carry out simple and complex instructions; (5) maintaining attention and concentration for extended periods; (6) the ability to make simple work-related decisions; (7) the ability to respond appropriately to changes in the work setting; and (8) the ability to be aware of

---

[4]Thus, the Court need not address Wallace's second contention.

[5]A "marked" degree of impairment is defined on Dr. Serravezza's assessment form as an "impairment which seriously affects ability to function." Tr. at 222.

normal hazards and take appropriate precautions.  Dr. Serravezza opined Wallace had the following extreme impairment:[6]  (1) constriction of interests; (2) the ability to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances; the ability to complete a normal workday or workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; and (3) the ability to respond to customary work pressures.  The doctor further opined Wallace had a marked/extreme impairment to sustain a routine without special supervision.  Id.  Dr. Serravezza opined Wallace's impairments caused limitations that have lasted or can be expected to last for 12 months or longer at the described level of severity.  Id. at 223.  The ALJ afforded no weight to this entire assessment.

In general, the opinions of examining physicians are given more weight than non-examining, treating more than non-treating, and specialists on issues within their areas of expertise more weight than non-specialists.  Mills v. Astrue, 226 F. App'x 926, 930 (11th Cir. 2007) (citing 20 C.F.R. § 404.1527(d)(1)-(2), (5)).  The opinion of a treating physician, such as Dr. Serravezza, must be given substantial or considerable weight unless "good cause" is shown to the contrary.  Phillips v. Barnhart, 357 F.3d 1232, 1240-41 (11th Cir. 2004) (citing Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997)).  The Eleventh Circuit Court of Appeals has concluded "good cause" exists when the:  "(1)

---

[6]An "extreme" impairment is defined on Dr. Serravezza's mental assessment as an "extreme impairment of ability to function."  Tr. at 122.

treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." Phillips, 357 F.3d at 1241; see also 20 C.F.R. § 404.1527(d).  When electing to disregard the opinion of a treating physician, the ALJ must clearly articulate his reasons for doing so.  Id.

Here, the ALJ provided three reasons for disregarding Dr. Serravezza's assessment.

> First, the ratings are inconsistent with the office notes from that facility which show, for example, a GAF of 64 which totally contradicts the form completed by the doctor.  Second, it is clear that the treating relationship with Dr. Serravezza was minimal.  The claimant's "E" exhibits do not even mention her as a treating source, and the office notes reflect fewer than 2 hours of encounters.  Third, the form is completely inconsistent with the claimant's identified activities of daily living; inconsistent with the observations of Dr. Ghostl[e]y; inconsistent with the opinion of Dr. Eno; and inconsistent with the recorded observations of Dr. Vyas and other medical providers.

Tr. at 23.  The Court will discuss each reason.

Turning first to the office notes from the South Central Alabama Mental Health Center, the facility in which Dr. Serravezza worked, the undersigned does not find Dr. Serravezza's treatment notes inconsistent with the facility's notes. The facility's treatment notes indicate, as the ALJ himself points out, "that [Wallace] has a bad case of nerves and cries a lot due to worrying about bills and marital conflicts. . . . [Wallace] was diagnosed with major depressive disorder, single episode, 'severe' without psychotic

8

features; partner related problems; obesity; hypertension and arthritis and [a] GAF [score] of 64." Tr. at 21. The Court fails to see how these medical notes contradict in any way Dr. Serravezza's opinions identified above, especially given that none of the facility's notes provides an assessment of Wallace's ability to work.

Moreover, the undersigned does not find the GAF score of 64 contradicts Dr. Serravezza's opinion. Generally speaking, the GAF scale "is used to report the clinician's judgment of the individual's overall level of functioning." Hudson ex rel. Jones v. Barnhart, 345 F.3d 661, 662 n.2 (8th Cir. 2003) (internal quotation marks omitted); see also Quaite v. Barnhart, 312 F. Supp. 2d 1195, 1200 (E.D. Mo. 2004). As merely "a global reference scale [intended] to aid in . . . treatment[,]" Jiles v. Barnhart, 2006 U.S. Dist. LEXIS 96626 at *8 (N.D. Ala. Sept. 11, 2006), a GAF score does not itself necessarily reveal a particular type of limitation and "is not an assessment of a claimant's ability to work[.]" Id. (noting also the Commissioner's acknowledgment "that GAF scores do not have a 'direct correlation to the severity requirements in [the] mental disorders listings'" (quoting 65 Fed. Reg. 50,746, 50,764-65 (Aug. 21, 2000)); see also Quaite, 312 F. Supp. 2d at 1200 (finding unless doctor assigns GAF number "because he perceived an impairment in plaintiff's ability to work, the score, standing alone, does not establish an impairment seriously interfering with plaintiff's ability to perform basic work activities"). Because the GAF score is not an assessment of Wallace's ability to work, the score cannot contradict Dr. Serravezza's assessment, which directly addresses this

question. Thus, the undersigned finds the ALJ's first reason for disregarding Dr. Serravezza's opinion flawed.

The Court will now consider the ALJ's second reason for disregarding Dr. Serravezza's opinion, which characterizes the treating relationship as "minimal." Tr. at 23. The Court points out the ALJ made this characterization at the same time he determined not to give Dr. Serravezza's opinion controlling weight. While the length of the treating relationship is certainly relevant and is rightly considered under the Regulations, it is a factor for making more nuanced determinations as to the quality of the medical opinion offered and cannot be used to circumvent the "good cause" requirement. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997); see also 20 C.F.R. § 416.927(d)(2)(i). The ALJ only considers this factor after determining the physician's opinion is not entitled to controlling weight. See 20 C.F.R. § 416.927(d)(2) (emphasis added). If the relationship between the physician and the patient, however, is so brief or inconsequential that it may not rightly be characterized as a "treating relationship," then the ALJ would not be held to the "good cause" standard. Poplardo v. Astrue, 2008 U.S. Dist. LEXIS 627, at *30 (M.D. Fla. Jan. 4, 2008) (citing Casher v. Halter, 2001 U.S. Dist. LEXIS 6116 at *13 (S.D. Ala. Mar. 29, 2001) ("If [the medical source] is not a treating physician, then there is no presumption that his opinion should be given controlling weight.")).

In the instant case, despite the Commissioner's argument, the relationship between

Wallace and Dr. Serravezza does constitute a substantial treating relationship.  See Milner v. Astrue, 2008 U.S. App. LEXIS 9788, at *2-3 (11th Cir. May 2, 2008) (concluding the ALJ did not err when he accorded little weight to a doctor's opinion because there was no evidence the doctor treated claimant more than once); Poplardo, 2008 U.S. Dist. LEXIS 627 at *30 (finding a substantial relationship where the doctor treated claimant for only four months); Cronon v. Barnhart, 244 F. Supp. 2d 1286, 1293 n. 21 (N.D. Ala. 2003) (finding that since the orthopedist had examined the patient three times he qualified as a treating physician).  Dr. Serravezza saw Wallace on five occasions between 2004 and 2006.  Each visit included treatment notes and observations of Wallace's mental status, and there is no evidence (or argument) suggesting the relationship between Wallace and Dr. Serravezza deviated in any way from accepted medical practice.  Because Dr. Serravezza is clearly a treating physician under the Regulations and Eleventh Circuit case law, the ALJ erroneously considered the length of the treating relationship while determining Dr. Serravezza's opinion was not entitled to controlling weight.  The ALJ's error constitutes an improper application of law.

The Court further finds the ALJ's reason that Dr. Serravezza's assessment is inconsistent with the recorded observations of Dr. Vyas and "other medical providers" unsupported by the record.  Tr. at 23.  The Court has reviewed the evidence submitted from Dr. Vyas and "other" sources.  While Dr. Vyas occasionally noted Wallace suffered

11

from (or had a history of) mental impairments, tr. at 181,[7] 208-09, 218-19, 229, none of his notes provides a mental assessment of Wallace's ability to work. The same is true of the other medical providers's observations. See e.g., Tr. at 139-51, 176, 178-79, 185-86, 216-17, 220, 237, 240, 259-61, 273. Thus, the Court fails to see how these medical notes contradict Dr. Serravezza's assessment in any way. Further clarification is warranted.

The undersigned is most troubled by the ALJ's reason that Dr. Serravezza's assessment is inconsistent with the observations of Dr. Ghostley and the opinion of Dr. Ellen N. Eno (Eno), a non-examining consultative physician. Contrary to the ALJ's conclusion, these observations and opinions do not appear completely inconsistent. For example, as stated above, Dr. Serravezza found Wallace had a marked impairment to respond appropriately to changes in the work setting and to interact appropriately with the general public. Dr. Serravezza also found Wallace had a marked impairment to understand, carry out, and remember simple and complex instructions and an extreme impairment to respond to customary work pressure. Tr. at 222-23. Dr. Ghostley, a consultative examiner, reported that Wallace's "ability to understand, to carry out, and to remember instructions, as well as to respond appropriately to supervisors, co-workers, and work pressures in a work setting, is impaired." Tr. at 188 (emphasis added). These observations, which directly concern Wallace's ability to work, yet lack any

---

[7]The Court points out Dr. Vyas twice denoted neurological observations, indicating that Wallace was "normal." Tr. at 182, 219; see also tr. at 148. The observations, however, do not provide any indication whether Wallace possessed the ability to work.

12

determination as to their level of severity, the ALJ summarily dismissed as "inconsistent" without any further explanation. While the undersigned recognizes the ALJ is not required to specifically discuss every piece of evidence in the record, the ALJ must consider the evidence as a whole, including relevant clinical findings and clearly articulate his reasons for disregarding the opinions of treating physicians. Phillips, 357 F.3d at 1241; see also 20 C.F.R. § 404.1527(d); Newsome ex rel. Bell v. Barnhart, 444 F. Supp. 2d 1195, 1198 n. 2 (M.D. Ala. 2006) (citing Ogranaja v. Comm'r of Soc. Sec., 2006 WL 1526062, at *3 (11th Cir. 2006) (unpublished) ("We do not require the ALJ to 'specifically refer to every piece of evidence in his decision,' so long as the decision is sufficient to allow us to conclude that the ALJ considered the claimant's medical condition as a whole."); Walden v. Schweiker, 672 F.2d 835, 839 (11th Cir. 1982) (citing Simmons v. Harris, 602 F.2d 1233, 1236 (5th Cir. 1979) (requiring the ALJ to consider the evidence as a whole including objective medical facts or clinical findings)). Because Dr. Ghostley's observations are not completely inconsistent with Dr. Serravezza's assessment, and the ALJ summarily found the two assessments inconsistent, the Court cannot determine whether the ALJ considered Dr. Ghostley's observations concerning Wallace's ability to work. On remand, the Commissioner shall have the opportunity to reconsider Dr. Ghostley's observations.

    Dr. Eno described Wallace's ability to interact appropriately with the general public and her ability to respond appropriately to changes in the work setting as

"moderately limited." Tr. at 198. On its face, it appears Dr. Eno's opinion is inconsistent with Dr. Serravezza's. Dr. Eno, however, also added in her assessment that Wallace's "[c]ontact with the general public should be infrequent" and "changes in the work setting should be minimal." Id. at 199. It is unclear whether these statements, when considered alone or in combination with her moderately limited assessment conflict with Dr. Serravezza's opinion. And, the ALJ does not specify the basis – Dr. Eno's "moderately limited" assessments or her statements (or both) – upon which the ALJ concluded Dr. Eno's opinion is inconsistent with Dr. Serravezza's opinion. A reviewing court should not be left to guess the ALJ's reasoning. Instead of guessing, the Court finds the best course is for the Commissioner to clarify his reasons for finding Dr. Eno's opinion inconsistent with Dr. Serravezza's on remand.

The ALJ's determination that Wallace's identified activities of daily living are inconsistent with Dr. Serravezza's opinion, alone, does not constitute substantial evidence. For this reason and the errors discussed above, the Court finds good cause does not exist to disregard Dr. Serravezza's opinion.

## V. CONCLUSION

The Court has carefully and independently reviewed the record and concludes the decision of the Commissioner is REVERSED and the case REMANDED for further proceedings consistent with this opinion. A separate order will issue.

DONE this 12th day of June, 2008.

                                                        /s/ Wallace Capel, Jr.
                                                        WALLACE CAPEL, JR.
                                                        UNITED STATES MAGISTRATE JUDGE